UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN SEARLE, #645865,

                Petitioner,

                                      CASE NO.  2:09-CV-13369
v.                                    HONORABLE LAWRENCE P. ZATKOFF

LLOYD RAPELJE,

                Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

**I.**    **Introduction**

      This is a habeas case brought pursuant to 28 U.S.C. § 2254.  Michigan prisoner John Searle pleaded guilty to: (1) arson of a dwelling house, Mich. Comp. Laws § 750.72, (2) arson - preparation to burn property valued at $20,000 or more, Mich. Comp. Laws § 750.77(1)(d)(i), (3) arson - burning other real property, Mich. Comp. Laws § 750.73, (4) two counts of arson of personal property valued at $20,000 or more, Mich. Comp. Laws § 750.74(1)(d)(i), (5) arson of personal property valued at $1,000 or more but less than $20,000, Mich. Comp. Laws § 750.74(1)(c)(i), and (6) arson - preparation to burn property valued at $1,000 or more but less than $20,000, Mich. Comp. Laws § 750.77(1)(c)(i), in the St. Clair County Circuit Court.  He was sentenced to concurrent terms of 13 to 20 years imprisonment on the arson of a dwelling house conviction, two to 10 years imprisonment on four of the other arson convictions, and one to five years imprisonment on two of the arson convictions in 2007.

In his pleadings, Petitioner challenges his sentencing, not his convictions. Specifically, he raises claims concerning the trial court's upward sentencing departure, the trial judge's impartiality, the trial judge's view of the crime scene in the absence of counsel, and the trial court's scoring of three offense variables of the state sentencing guidelines. Respondent has filed an answer to the petition contending that it should be denied. For the reasons stated, the Court denies the petition for a writ of habeas corpus and denies a certificate of appealability as to all of Petitioner's claims.

## II.    Facts and Procedural History

Petitioner's convictions arise from his conduct of setting multiple fires on properties located on McLain Road in St. Clair County, Michigan, during the early morning hours on September 9, 2006. One set of fires caused damage to a family's home and their teenage son suffered smoke inhalation. Another fire destroyed a man's truck. A third fire resulted in the destruction of a barn and its contents, including the deaths of 18 horses. Petitioner tendered his plea on April 20, 2007, in exchange for the dismissal of additional misdemeanor charges. At the plea hearing, Petitioner provided a factual basis for his plea and indicated that he was pleading guilty of his own free will. The trial court accepted the plea, finding it to be knowing, intelligent, and voluntary.

Petitioner was sentenced on May 21, 2007. During the sentencing hearing, the trial judge admitted that he had driven the probation officer to the area of the fires and observed the scene without getting out of his vehicle. The judge waved to a woman mowing grass while near the scene. He did not recognize the woman at that time, but realized that she was one of the property owners at the sentencing hearing. None of the parties raised an objection to these matters.

Defense counsel objected to the scoring of several offense variables at the hearing. The trial court heard arguments from the prosecutor and defense counsel and resolved those issues. The court

2

scored OV 3 at five points for bodily injury not requiring medical treatment based upon the smoke inhalation suffered by the teenage boy. The court scored OV 4 at 10 points for degree of psychological injury to a victim based upon the barn owner's traumatic experience in dealing with the fire and the loss of her horses and livelihood. The court scored OV 9 at 25 points for 10 or more victims placed in danger of physical injury based upon the people who lived nearby, as well as responding personnel.

The trial court also allowed the victims and Petitioner to address the court. During the victims' remarks, the judge stated that he grew up on a farm with horses, reminisced about the horses' smell and nicker, and indicated that he presented horse awards at the county fair. The judge also confirmed that he had reviewed photographs of the burned property and the dead horses in preparation for sentencing.

The judge went on to discuss the possibility of exceeding the minimum sentence guideline range. The court stated:

> We also have to consider me, because my obligation in effecting and pronouncing an appropriate sentence is a number of factors that I have to consider, not the least of which are the guidelines, but I have to consider not only the victims, my community, but I have to consider the defendant. I'm required to do that. And I'm trying to be on guard of my own emotions because – I got to be careful, I, I can't necessarily stick up for the animals because I don't think the law permits me to do that, but I've already indicated I was born on a farm. The animals were my best friends. And what farmers do, or those who are in charge of animals, they're obligated to – because they're in charge of the animals, are obligated to see to their welfare, to not put them in danger, or in some way since they're captured, they're not free to run around anymore, their, their guardians are required to see to their, their best interest, feed, shelter, and all those kinds of things.
>
> So, I'm trying really hard not to let my own personal experience creep in, but in saying that, I'm not doing that, because the law permits the Court if given proper circumstances, to exceed the guidelines, and the guideline, therefore, if it is exceeded the [minimum] would be two-thirds of – the maximum....

The court then departed above the sentencing guideline range of 51 to 87 months (on the arson of a dwelling house conviction) by imposing a minimum sentence of 13 years imprisonment. The court indicated that it was departing above the recommended range because the guidelines did not account for the loss of the horses, the financial and emotional injuries to the barn owner and other victims, and the negative impact on the community. The court also found that Petitioner knew or should have known of the potential effect of his actions on life, limb, and property due to his past experience with the Coast Guard and said that there was no excuse for his actions. The court emphasized that it had considered the guidelines, sentencing reports, letters and correspondence, and other relevant information and was basing its sentence on the entire record.

Following sentencing, Petitioner filed a delayed application for leave to appeal with the Michigan Court of Appeals asserting the same sentencing claims raised on habeas review. The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented." *People v. Searle*, No. 285516 (Mich. Ct. App. June 17, 2008) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Searle*, 482 Mich. 1067, 760 N.W.2d 461 (2008).

Petitioner thereafter filed his federal habeas petition with this Court asserting the following claims as grounds for relief:

I.    He is entitled to re-sentencing where the trial court disproportionately exceeded the statutory sentencing guidelines range based on factors that are not substantial and compelling.

II.   He is entitled to re-sentencing under the state and federal due process clauses where the trial judge lacked impartiality.

III.  He was denied his Sixth Amendment right to counsel when the court and the probation officer viewed the scene without the presence of counsel.

4

IV.    He is entitled to re-sentencing because the sentencing guidelines range was enhanced by the scoring of offense variables 3, 4, and 9 based on facts not proven to a jury beyond a reasonable doubt nor admitted by him in support of his guilty plea in violation of the Sixth and Fourteenth Amendments to the United States Constitution.

Respondent has filed an answer to the petition contending that it should be denied because the claims are not cognizable and/or lack merit.  Petitioner has filed a reply to that answer.

## III.    Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002).  "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case."  *Wiggins*

5

*v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, _ U.S. _, 130 S. Ct. 1855, 1862 (2010) (quoting *Lindh*, 521 U.S. at 333, n. 7; *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

The Supreme Court recently held that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, _ U.S. _, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme

6

Court at the time the state court renders its decision.  *See Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, _ U.S. _, 129 S. Ct. 1411, 1419 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (quoting *Wright v. Van Patten*, 552 U.S. 120, 125-26 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003).  Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'"  *Harrington*, 131 S. Ct. at 785.  Furthermore, it "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16.  While the requirements of "clearly established law" are to be determined solely by Supreme Court precedent, the decisions of lower federal courts may be useful in assessing the reasonableness of the state court's resolution of an issue.  *See Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review.  *See* 28 U.S.C. § 2254(e)(1).  A petitioner may rebut this presumption only with clear and convincing evidence.  *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).  Moreover, habeas review is generally "limited to the record that was before the state court." *Cullen v. Pinholster*, _ U.S. _, 131 S. Ct. 1388, 1398 (2011).

IV.    **Analysis**

A.    Upward Sentencing Departure

Petitioner first asserts that he is entitled to habeas relief because the trial court erred in departing above the recommended state sentencing guideline range for his minimum sentence on the arson of a dwelling house conviction.

The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts.  Claims which arise out of a state trial court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001).  Petitioner's sentence is within the statutory maximum of 20 years imprisonment.  *See* Mich. Comp. Laws § 750.72.  A sentence imposed within the statutory limit is generally not subject to federal habeas review.  *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Lucey*, 185 F. Supp. 2d at 745; *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

To the extent that Petitioner asserts that his sentence is invalid because the trial court erred in departing upward from the recommended sentencing guideline range for his minimum sentence, his claim is not cognizable on federal habeas review because it is basically a state law claim.  *See Austin v. Jackson*, 231 F.3d 298, 300-01 (6th Cir. 2000); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov.19, 1993) (ruling that departure from state sentencing guidelines is a state law issue not cognizable on federal habeas review); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich.

8

2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001). "In short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *see also Mitchell v. Vasbinder*, 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). Habeas relief does not lie for perceived state law errors. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Any alleged error in departing above the guideline range does not merit habeas relief.

B.   Judicial Impartiality

Petitioner next asserts that he is entitled to habeas relief because the trial judge was biased against him and lacked impartiality at sentencing. Petitioner cites to the trial judge's remarks about his own experience growing up on a farm with horses, his acknowledgment of his own emotions, and the fact that he departed above the minimum sentencing guidelines.

The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Due Process Clause of the Fourteenth Amendment requires a fair trial in a fair tribunal before a judge with no actual bias against the defendant or an interest in the outcome of the case. *See Bracy v. Gramley*, 520 U.S. 899, 904-05 (1997). Judicial misconduct claims involve two types of cases. One group addresses charges of "judicial bias" stemming from a trial judge's "personal interest" in the outcome of a case, usually derived from some extrajudicial association with the cause or one of the parties. *See In re Murchison*, 349 U.S. 133, 136 (1955). The second group concerns charges of "judicial misconduct" in which the trial judge is accused of conducting the proceedings in a manner which exhibits a "deep-seated favoritism or antagonism that would make fair judgment impossible." *See Liteky v. United States*, 510 U.S. 540, 555-56 (1994); *see also Alley v. Bell*, 307 F.3d 380, 386 (6th Cir.

9

2002).  Adverse rulings themselves are not sufficient to establish bias or prejudice.  *See Liteky*, 510 U.S. at 555 ("judicial rulings alone almost never constitute a valid basis for a bias or partiality motion"); *United States v. Hynes*, 467 F.3d 951, 960 (6th Cir. 2006) (citing *Liteky*).  A constitutional violation occurs only when a judge's rulings or statements show "a predisposition so extreme as to display clear inability to render fair judgment."  *Johnson v. Bagley*, 544 F.3d 592, 597 (6th Cir. 2008).  In reviewing a judicial bias claim, a federal habeas court should presume that the trial judge properly discharged his or her official duties.  *See Johnson v. Warren*, 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004).

While the trial judge's comments reflected his understanding of the crime and Petitioner's conduct that day, a review of the record fails to establish that he exhibited a personal bias against Petitioner.  Rather, the judge considered the circumstances of the crime, Petitioner's background, the damage to the victims and the community, and the relevant sentencing reports and arguments in imposing sentence.  The fact that the trial judge exercised his discretion in imposing a sentence above the minimum sentence guideline range, standing alone, does not establish bias.  *See Liteky*, 510 U.S. at 555; *see also United States v. Lossia*, 193 F. App'x 432, 437-38 (6th Cir. 2006).

Additionally, the trial judge's reflections about his own experiences growing up on a farm with horses did not render Petitioner's sentencing proceedings unfair.  *See Barclay v. Florida*, 463 U.S. 939, 948-51 (1983) (rejecting claim challenging trial judge's references to his own World War II experience); *Mann v. Thalacker*, 246 F.3d 1092, 1101 (8th Cir. 2001) (judge's remarks about personal experience as sexual abuse victim did not establish partiality against the defendant); *Barber v. Gladden*, 327 F.2d 101, 104-05 (9th Cir. 1964) (trial judge's discussion of his boyhood experience regarding a robbery at his father's store did not demonstrate bias at sentencing); *Andrews v. Davis*,

10

No. 07-14917, 2010 WL 4226664, *13-14 (E.D. Mich. Oct. 20, 2010) (denying habeas relief on judicial bias claim where judge discussed his personal experience with his son's bipolar disorder); *Welch v. Burke*, 49 F. Supp. 2d 992, 1008-09 (E.D. Mich. 1999) (trial court's comments about death of his own child did not demonstrate bias).  As the Supreme Court has explained:

> We have never suggested that the United States Constitution requires that the sentencing process should be transformed into a rigid and mechanical parsing of statutory aggravating factors.  But to attempt to separate the sentencer's decision from his experiences would inevitably do precisely that.  It is entirely fitting for the moral, factual, and legal judgment of judges and juries to play a meaningful role in sentencing.

*Barclay*, 463 U.S. at 950-51.

In this case, the trial judge's comments at sentencing, when viewed in context and the entire record, reflect his empathy for the victims and his concern about the financial, emotional, and destructive impact of the arson on the victims and the community as a whole.  They do not reflect unfair prejudice or "a predisposition so extreme as to display clear inability to render fair judgment."  Petitioner has not shown that the trial judge was personally biased against him, engaged in misconduct, or otherwise deprived him of a fundamentally fair proceeding.  Habeas relief is not warranted on this claim.

C.    Judicial View of Crime Scene in the Absence of Counsel

Petitioner next asserts that he is entitled to habeas relief because the trial judge and the probation officer violated his Sixth Amendment rights by viewing the crime scene before sentencing in the absence of defense counsel.  At the sentencing hearing, the trial court informed the parties that he drove the probation officer to view the crime scene, but did not exit his vehicle.  He also waved to a woman whom he did not recognize at that time, but was one of the property owners.  Neither the prosecution nor defense counsel objected to such matters at sentencing.

11

The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. It is well-settled that a criminal defendant has a right to counsel during the critical stages of his or her criminal proceedings. *See, e.g., Bell v. Cone*, 535 U.S. 685, 695-96 (2002); *Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000); *United States v. Cronic*, 466 U.S. 648, 659 (1984); *United States v. Wade*, 388 U.S. 218, 227 (1967); *see also Van v. Jones*, 475 F.3d 292, 311-12 (6th Cir. 2007). A sentencing hearing is a critical stage. *See Gardner v. Florida*, 430 U.S. 349, 358 (1977); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *see also Mempa v. Rhay*, 389 U.S. 128, 134 (1967) (absence of counsel at sentencing violates the Sixth Amendment).

The complete denial or absence of counsel at a critical stage of the proceedings is a per se Sixth Amendment violation which mandates a presumption of prejudice and is generally not subject to harmless error review. *See Holloway v. Arkansas*, 435 U.S. 475, 489 (1978) (ruling that reversal is automatic when a defendant is denied counsel during a critical stage or throughout the prosecution of a capital offense); *see also Cronic*, 466 U.S. at 659-60; *Van*, 475 F.3d at 312. A partial denial of counsel or the absence of counsel at a non-critical stage of the proceedings, however, is not such a structural error. Rather, such a trial-type error requires an inquiry into the prejudicial effect and/or harmlessness of the error. *See Satterwhite v. Texas*, 486 U.S. 249, 256-58 (1988); *Rushen v. Spain*, 464 U.S. 114, 117-18 (1983); *Coleman v. Alabama*, 399 U.S. 1, 11 (1970); *Wade*, 388 U.S. at 239-40; *Hereford v. Warren*, 536 F.3d 523, 532-33 (6th Cir. 2008); *Mitzel v. Tate*, 267 F.3d 524, 534 (6th Cir. 2001); *see also United States v. Owen*, 407 F.3d 222, 227-30 (4th Cir. 2005) (citing cases); *Ellis*

*v. United States*, 313 F.3d 636, 643 (1st Cir. 2002) (stating that per se prejudice applies to a "wholesale denial of counsel," but harmless error analysis applies to a "short-term, localized denial of counsel").

In this case, there is no dispute that the trial judge and the probation officer viewed the location of the arson prior to sentencing and that neither the prosecutor nor defense counsel were present. The crucial question before the Court, therefore, is whether the trial judge's view (and the probation officer's view) of the crime scene constitutes a critical stage of the sentencing proceedings which mandated the presence of counsel to satisfy the Sixth Amendment. Petitioner cites to no Supreme Court authority indicating that such a post-guilty plea and pre-sentencing view of a crime scene constitutes a critical stage of the proceedings requiring the presence of defense counsel and/or that the absence of counsel at such a view constitutes a structural error warranting re-sentencing without a showing of prejudice. Nor has this Court found any such authority. Consequently, it cannot be said that the state court's denial of relief on this claim is contrary to, or an unreasonable application of, clearly established Supreme Court precedent.

Moreover, a review of lower federal court decisions indicates that the trial judge's and probation officer's view of the arson location was not a critical stage of the sentencing proceedings. The United States Court of Appeals for the Sixth Circuit has identified a list of the Supreme Court's "various labels" of what constitutes a critical stage as those situations –

> (1) that hold "significant consequences for the accused," *Cone*, 535 U.S. at 695-96; (2) where "[a]vailable defenses may be irretrievably lost, if not then and there asserted," *Hamilton v. Alabama*, 368 U.S. 52, 54 (1961); (3) where "rights are preserved or lost," *White v. Maryland*, 373 U.S. 59, 60 (1963) (per curiam); (4) when counsel's presence is "necessary to mount a meaningful defense," *United States v. Wade*, 388 U.S. 218, 225 (1967); and (5) where "potential substantial prejudice to defendant's rights inheres in the . . . confrontation and [where] counsel [can] help

avoid that prejudice," *Coleman v. Alabama*, 399 U.S. 1, 9 (1970) (internal quotation marks omitted).

*Hereford*, 536 F.3d at 529; *see also Van*, 475 F.3d at 312-13.  Given such characterizations, the Sixth Circuit has "formulated a working definition of a critical stage" and found the "common thread" in those decisions to be "the likelihood 'that significant consequences might have resulted from the absence of counsel at the stage of the criminal proceedings.'"  *Hereford*, 536 F.3d at 529-30 (quoting *Van*, 475 F.3d at 312-13).

With these standards in mind, the Court finds that the judge's and the probation officer's view of the crime scene was not a critical stage of the sentencing proceedings.  The view consisted of a drive-by of the arson location (and a wave to one of the property owners) after Petitioner's guilty plea but prior to his sentencing.  The situation was non-adversarial in nature, no evidence was taken, no determinations about guilt or innocence were made, there were no defenses or rights to be saved or lost, and no significant consequences arose from the view.  To be sure, photographs of the burned property and animals had already been presented to the trial court, along with other relevant sentencing information.

In an analogous situation, the federal courts have determined that a pre-sentence interview is not a critical stage of the proceedings requiring counsel under the Sixth Amendment.  In so ruling, the courts have relied upon the non-adversarial nature of the situation and the trial court's sentencing discretion.  *See, e.g., United States v. Tisdale*, 952 F.2d 934, 939–40 (6th Cir.1992) (pre-sentence interview in a non-capital case is not a 'critical stage' because the probation officer does not act on behalf of the prosecution); *United States v. King*, 559 F.3d 810, 813-14 (8th Cir. 2009) (no Sixth Amendment right to counsel at a pre-sentence report interview because it is not a critical stage); *Ingmire v. Ryan*, 122 F. App'x 334, 335 (9th Cir. 2005) (same); *United States v. Tyler*, 281 F.3d 84,

14

96 (3d Cir. 2002) (stating that "no court has found the Sixth Amendment right to counsel applies to routine pre-sentence interviews" and citing cases); *United States v. Hodges*, 259 F.3d 655, 660 (7th Cir. 2001); *United States v. Gordon*, 4 F.3d 1567, 1571-72 (10th Cir.1993). This Court agrees with those decisions and finds that they lend support to the Court's determination that the trial judge's and probation officer's view of the crime scene was not a critical stage of the sentencing proceedings which mandated the presence of counsel.

In addition, even if the Court were to find that there was a constitutional error for purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

In this case, Petitioner has failed to demonstrate that he suffered any prejudice from the trial judge's and probation officer's view of the arson location – and this Court can discern none from the record. At the sentencing hearing, the trial judge disclosed his actions to the parties and no objections were raised by the prosecution or the defense. The trial judge explained that he and the probation officer drove to the arson location and that he waved to one woman mowing her lawn, a property owner whom he did not recognize at the time. He took no evidence and did not get out of the vehicle. In imposing sentencing, the trial judge did not indicate that he was relying upon the on-site visit. He did, however, acknowledge that he reviewed photographs of the burned property and animals, along with other relevant materials, at the time of sentencing. Given such circumstances, it is clear that any error arising from the trial judge's and probation officer's pre-sentencing view

15

of the crime scene in the absence of counsel was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

      D.    <u>Scoring of the Offense Variables</u>

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court violated his Sixth Amendment rights by relying upon facts neither admitted by him nor proven beyond a reasonable doubt in scoring offense variables 3, 4, and 9 of the state sentencing guidelines.

The state courts' denial of relief on this claim is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. As noted, Petitioner's sentences are within the statutory maximums. *See* Mich. Comp. Laws §§ 750.72, 750.73, 750.74(1), 750.77(1). As such, they are generally not subject to federal habeas review. *See Townsend*, 334 U.S. at 741; *Lucey*, 185 F. Supp. 2d at 745; *Cook*, 56 F. Supp. 2d at 797. Any claim that the trial court erred in scoring offense variables under the state sentencing guidelines is not cognizable on federal habeas review because it is a state law claim. *See Austin*, 213 F.3d at 302; *see also Howard*, 76 F. App'x at 53. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *see also Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002).

Petitioner also cannot prevail on his claim that he is entitled to habeas relief because the trial judge relied upon facts not admitted by him nor proven beyond a reasonable doubt in imposing his sentence in violation of the Sixth Amendment. Petitioner cited *Blakely v. Washington*, 542 U.S. 296 (2004) and *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in support of his position in the state courts. Such a challenge has been foreclosed by the Sixth Circuit's decision in *Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) ("[Petitioner] argues that the Michigan trial judge violated

16

*Apprendi* by finding facts that raised his minimum sentence. But *Harris v. United States* tells us that *Apprendi*'s rule does not apply to judicial factfinding that increases a minimum sentence so long as the sentence does not exceed the applicable statutory maximum."); *see also Montes v. Trombley*, 599 F.3d 490, 495 (6th Cir. 2010) (the *Blakely-Apprendi* rule requiring any fact that increases the penalty for a crime beyond the prescribed statutory maximum to be submitted to a jury and proved beyond a reasonable doubt does not apply to laws that set the maximum sentence by statute but that permit a judge to determine the minimum sentence through judicial factfinding, and does not preclude a judge from utilizing the preponderance-of-the-evidence standard when finding facts related to sentencing). This Court is bound by the Sixth Circuit's decisions. Because Petitioner's sentence is within the statutory maximum penalty, which was not enhanced by judicial factfinding, no Sixth or Fourteenth Amendment violation occurred. Habeas relief is not warranted on this claim.

## V.   Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition. Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could

17

conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*

*v. Cockrell*, 537 U.S. 322, 327 (2003).

Having considered the matter, the Court concludes that Petitioner has not made a substantial showing of the denial of a constitutional right as to any of his claims. Accordingly, the Court **DENIES** a certificate of appealability as to all four of his habeas claims.

**IT IS SO ORDERED**.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: September 7, 2011

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on September 7, 2011.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

18